UNITED STATES v. BORDER BROKERAGE CO. (No. 5191)*

United States Court of Customs and Patent Appeals, March 16, 1967**

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Glenn E. Harris* for the United States.

*Glad & Tuttle* (*Edward N. Glad*, of counsel) for appellee.

[Oral argument February 7, 1966, by Mr. Harris and Mr. Glad]

Before RICH, Acting Chief Judge, MARTIN, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK***

SMITH, Judge, delivered the opinion of the court:

The issue here is whether the Customs Court erred in sustaining appellee's protest that certain uncleaned tree seeds were dutiable as

---

*C.A.D. 905.
**Petition for rehearing denied June 22, 1967.
***Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

"garden and field seeds," par. 764, Tariff Act of 1930 as modified, and certain commingled material, a "woody residue," was dutiable as a crude vegetable substance, n.s.p.f., par. 1722, Tariff Act of 1930 (Free List). 53 Cust. Ct. 53, C.D. 2472. The appellant claims here that segregation of the commingled material for customs purposes should not have been allowed under section 508, Tariff Act of 1930, as amended, and that duty should be assessed on the total weight of the import at the rate provided for garden and field seeds. Appellant argues that the commingled materials amount to "impurities in seed" for which no "allowance" can be made, par. 763, Tariff Act of 1930, and the court below has erred, as a matter of law, in permitting an allowance allegedly contrary to par. 763.[1]

Resolution of the issue requires a more detailed consideration of the nature of the imported goods. The importer, Manning Seed Co., acquires "hemlock, spruce, cedar, and balsam cones" in Canada. According to the undisputed facts of record, the cones are crushed in certain machinery in Canada in order to free the seeds from the cones. The imported material consists of uncleaned seeds, cone particles, and the stem end of the cones. After importation the uncleaned seeds are separated from the other materials. The seed then goes through a "de-winging" process to remove the wings from the seed. Appellee sells a seed product which is at least "97 per-cent pure." The difference of 3 percent apparently consists of non-seed materials which escape the various screening and separating processes.

The dispute here concerns the uncleaned tree seeds and cone particles and stem ends at the time of importation, prior to any treatment in the United States. The court below found, and appellant here agrees, that the "tree seed constitutes 40 percent of the gross weight and * * * the woody residue 60 percent thereof," and these respective proportions are readily ascertainable, par. 508. The "woody residue," consisting of cone particles and cone stem ends, is burned by the importer upon separation. According to the court below, the "woody residue" has no "commercial value." Appellant does not dispute that the woody residue is a "vegetable substance," rather, it is argued that for customs purposes this residue must be considered as "impurities" in the seed for which no allowance can be made, par. 763, rendering pars. 508, 1722, inapplicable.

Thus the narrow question presented is whether the court below erred in finding, as a matter of law, that the "woody residue" was not an "impurity" in the seed. The court's opinion points out that "Merchandise closely resembling that at bar was involved in *United States* v. *Amendola,* 5 Ct. Cust. App. 516, T.D. 35156."

---

[1] Paragraph 763, Tariff Act of 1930, provides in pertinent part:
   * * * Provided, That no allowance shall be made for dirt or other impurities in seed of any kind.

Before considering the reasoning and holding of the *Amendola* case, the existing precedents at that time will be considered. In *Otto G. Mayer & Co.* v. *United States*, 2 Syn. Treas. Dec. 534, T.D. 20038 (1898), "ordinary pine cones" were assessed for duty as "nuts shelled or unshelled." The claim that it was exempt from duty as "a crude vegetable substance not otherwise specially provided for" was sustained.

In *Van Dyk & Catreva* v. *United States*, 20 Treas. Dec. 1043, T.D. 31616 (1911), "cones from a pine tree" having "seeds or nuts * * * between the layers of the cones" were imported. The collector "separated the seeds or nuts from the cones, placing no duty upon the cones." The board stated in its opinion, "The question whether the cone itself should be assessed for duty we do not deem it advisable to pass upon in this case; that question is really not before us * * *."

*P. Garguilo & Bro.* v. *United States*, 21 Treas. Dec. 43, T.D. 31757 (1911), involved "pine-tree cones" and "kernels." Duty was assessed on the weight of the kernels alone, i.e., 20 percent of the gross weight.

Shortly after the *Van Dyk* and *Garguilo* cases, Treasury Department Directive, T.D. 31854, issued which directed that duty be assessed on "pine cones," having "seeds or kernels," "upon the total weight of the cones." 21 Treas. Dec. 209 (1911).

Returning now to *Amendola*, the importations consisted of "pine cones with their nutlike seeds still attached to them." The opinion states, 5 Ct. Cust. App. at 517:

* * * Duty was assessed at that rate [by the Customs Collector] upon the aggregate weight of the cones and nuts, in accordance with the departmental instructions contained in T.D. 31854 [21 Treas. Dec. 209].

The importer claimed that the imported pine cones were entitled to duty-free entry under par. 630, as "vegetable substances, crude or unmanufactured, not otherwise specially provided for."

In the proceedings below in *Amendola*, the Board of General Appraisers, 27 Treas. Dec. 116, T.D. 34698 (1914), sustained a protest that "duty should have been assessed on the weight of the nuts alone rather than on the combined weight of the cone and nuts," citing *P. Garguilo*, supra, with no mention of the Treasury Directive.

The pine cones were more fully described in *Amendola*, 5 Ct. Cust. App. at 517, as follows:

It appears from the testimony that the cones in question are imported from Italy in the condition in which they are when first taken from the tree, with the nuts attached under the imbricated leaves or scales of the cone. The cones with the nuts attached are bought and sold in the markets by the hundred. The cones are shattered into pieces as the best means of recovering the nuts, the broken pieces are burned up or thrown away as valueless, and the nuts are eaten "like peanuts." As stated above, it appears from the testimony that in the case of the present importation the nuts themselves constituted 20 per cent of the gross weight of the importation.

The court continued in its opinion:

> It seems clear from the foregoing statement that the joint importation of nuts and cones would not be entitled to free entry as crude vegetable substances, although the cones would be free if imported alone. * * *

The "nutlike seeds" in *Amendola* were determined to be "nuts of all kinds, shelled or unshelled, not specially provided for" under par. 283, Tariff Act of 1909, which additionally provides that "no allowance shall be made for dirt or other impurities in nuts of any kind." The opinion then states, 5 Ct. Cust. App. at 518-19:

> The question next arises whether the appropriate duty should be assessed upon the gross weight of the cones and nuts taken together or only upon the weight of the nuts alone.
>
> Paragraph 283, *supra*, imposes a duty by the pound upon nuts shelled or unshelled, and provides that no allowance shall be made for dirt or other impurities in nuts of any kind. The first question, therefore, is whether the cones should be weighed for duty upon the theory that they are the shells of the pine nuts. If this question be answered in the negative the question next arises whether the cones should be regarded as "dirt or other impurities in" the nuts, for which the paragraph prohibits any allowance.
>
> It seems clear from common knowledge that these two questions should both be answered in the negative.
>
> As appears from the foregoing definitions the shell of a nut is "a hard, outer cover of a fruit," being "a hard, leathery" cover which "does not open when ripe." Judged by these definitions the cones in question are not shells, nor are they parts of the nuts as such, since they do not serve in any way to inclose or cover the nut kernels. The pine nuts themselves, however, are inclosed or covered by shells like those of almonds or walnuts, except that they are not so thick and substantial. These shells grow upon the cones and contain the kernels as do the shells of other familiarly known nuts. It seems clear, therefore, that the cones are not shells and are not dutiable as such.
>
> It is equally improper to describe the cones as "dirt or other impurities in" the nuts. They are obviously not "dirt," nor do they respond to the description of "other impurities in" the nuts. In the case of the present importations the cones weigh four times as much as the nuts, and are more bulky than the nuts in even a greater proportion. They can hardly be described as "impurities in" the nuts which they thus hold and carry. It is true that the cones and nuts are imported as entireties; nevertheless it is administratively practicable to ascertain the net weight of the nuts alone. At least there is nothing in the present record which contradicts the testimony of the importer to that effect. There seems, therefore, to be no reason why they should not be separated for duty purposes, and the nuts assessed alone, they being in fact the only dutiable portion of the importation.

Thus *Amendola* may be summarized as follows: pine cones are "vegetable substances, crude or unmanufactured, not otherwise specially provided for," entitled to duty-free entry, and may be segregated from "nutlike seeds" for customs purposes which does not constitute an "allowance" contrary to par. 283. The court was, of course, fully aware of the Treasury Directive discussed earlier, and rejected it.

The court below additionally found:

Other cases have held pine cones to be free of duty as crude vegetable substance. *Otto G. Mayer & Co.* v. *United States*, 2 Treas. Dec. 534, T.D. 20038; *Koeller-Struss Co.* v. *United States*, 58 Treas. Dec. 947, Abstract 12955. In *E. Berghausen Chemical Co.* v. *United States*, 60 Treas. Dec. 725, T.D. 45221, it was held that broken pieces of saparitanut shells, imported in bulk, were classifiable as crude vegetable substances.

In *Koeller-Struss*, "ordinary cones such as are found on pine trees" were found to be entitled to duty-free entry as "vegetable substances, crude or unmanufactured, not specially provided for."

In *E. Berghausen*, "the importation consists of broken pieces of small nut shells in bulk" which were invoiced as "saparita-nut shells." The claim for duty-free classification as "crude, unmanufactured vegetable substance, not specially provided for" was sustained.

The appellant distinguishes the above cases as follows:

The *Otto G. Mayer, Koeller-Struss*, and *E. Berghausen* decisions would undoubtedly be persuasive of the classification which should be accorded to broken pine or other cone fragments imported as *separate* articles of commerce in their own right (*E. Berghausen*) or of *whole* pine or other cones imported without extraction of the "nuts" or seeds, but they are not controlling authority as to the proper tariff treatment of such seeds with which cone fragments, twigs, and associated debris are admixed, as merchandise is classifiable in its condition as imported and not in the condition in which it may have been prior to importation. It is clear that in the *Koeller-Struss* case the whole cones were articles of commerce with a distinct value in themselves, as were the broken shells in *E. Berghausen;* and in *Otto G. Mayer*, in which the Board treated the merchandise as cones and in which the Board was not called upon to decide their segregability from the "nuts," those cones were treated inferentially as articles having a commercial value in their imported condition. These distinctions form a background necessary to a proper appreciation of the *Amendola* decision, in which the first two cases above were cited and in which for the first time "segregation" and "allowance" were in issue. In *Amendola* the court held that the whole cones were not impurities *in* the seeds, which had not even been extracted from the cones and which in fact carried the seeds in or upon them; and while the court noted that, *after* importation, the cones were shattered and discarded to obtain the nuts or seeds, appellant submits that the court did not intend to imply that the court could, under the facts presented to it, disregard the condition in which the cones were actually imported in that instance and disregard the prior holdings that such whole cones, when imported as separate articles of commerce in their own right, were assessable as such. * * *

We are not persuaded by the government's attempt to distinguish the above cases. First, describing the importation as "seeds with which cone fragments, twigs, and associated debris are admixed" as appellant does, is highly argumentative and unsupported by the record. The sole permissible distinction on the facts of record as to the cones here and those in *Amendola* is that here we have crushed cones and there it was whole cones.

Second, the appellant's attempts to both distinguish *Amendola* from the facts of record here and harmonize it with other precedents are too little and too late. The court in *Amendola* expressly stated it was dealing with "valueless cones" which were either "thrown away" or "burned," just as here. It did not require that the importer show that the cones had "a commercial value in their imported condition," as the appellant infers, nor do we. We are therefore not persuaded that the court below erred when it did not attach significance to the fact that here the cones are crushed and not whole where in both instances the cone material is considered valueless.

The "too late" aspect of appellant's attempts are best shown by referring to the gist of appellant's argument:

\* \* \* "segregation" may [not] be availed of to break out from entered merchandise, for separate dutiable treatment, a commingled substance of no commercial value. \* \* \*

In a rather extensive brief of some 52 pages (the entire record here is 31 pages) including the citation of some 54 cases, 22 statutes, and 5 regulations for our consideration, appellant urges "valueless" substances or materials cannot be segregated for customs purposes. This clearly raises a substantial question as to the proper construction of section 508 which does not appear to have been dealt with below.

Without the views of the court below, we do not consider that question to be presented here. It is not our function to make the initial evaluation of the huge amount of material offered by appellant.

We find that the court below cited ample precedent to establish that the cones were crude vegetable substances, n.s.p.f., entitled to duty-free entry, and that as presented below segregation was not contrary to law.[2]

The judgment of the Customs Court is therefore *affirmed*.

AFFIRMED

WORLEY, C. J., did not sit but is participating by agreement of counsel.

MARTIN, J., participated in the hearing but died before a decision was reached.

---

[2] The government's brief cautions:
\* \* \* If the trial court's approach were to be accepted, it is doubtful that *any* impurity would be found, for appellant can conceive of no substance which, if it becomes a valuable article of commerce, would not find "separate tariff status" somewhere in the prevailing tariff act, even down to "dirt" (e.g. topsoil) or "moisture" (e.g., water imported into a dought-stricken area). \* \* \*
We think the government's fears lack substance. The court below cited ample precedent that *pine cones* had achieved tariff status as *crude vegetable substances*. We do not deal with other materials.

RICH, Judge, concurring.

I agree with Judge Smith that *United States* v. *Amendola*, 5 Ct. Cust. App. 516, T.D. 35156, while dealing with nuts rather than seeds, contains reasoning which fully supports the decision below. There, as here, the importation consisted of nuts and pine cones in which, as pine nuts, they were still contained. By weight, the nuts were 20% of the importation. Here the seeds are 40%. The balance in each case consists of cones entitled to free entry as crude vegetable substance. In *Amendola*, as here, the cone material was commercially worthless and destroyed. In *Amendola* the court was faced with the same provision as to nuts that we are faced with here as to seeds, namely, "no allowance shall be made for dirt or other impurities in nuts of any kind." (Par. 283, Tariff Act of 1909.) The court found, as to the nuts and cones, "no reason why they should not be separated for duty purposes" and affirmed the decision of the Board of General Appraisers sustaining the protest and holding that duty should be assessed only upon the weight of the nuts.

My view of *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. App. 267, T.D. 37536, is that while the screenings there admixed with the flaxseed and held not to be "impurities" *had* commercial value and were subject to duty, rather than being subject to free importation, there is nothing in the holding to the effect that the matter admixed with seeds *must* have commercial value and be subject to duty to justify segregation.

———

KIRKPATRICK, J., dissenting, with whom ALMOND, J., joins.

Congress has expressly forbidden an allowance for impurities contained in imported seeds. The majority holds that cone particles and pieces of stem mixed with the imported seeds are not impurities but rather a separate commodity. In any common sense view of the matter, the importer was importing tree seeds; and the worthless trash with which they were mixed was matter that had to be separated and discarded. It seems to me that this worthless trash corresponds more nearly to the ordinary meaning of the word "impurities" than to "crude vegetable matter, n.s.p.f." True, it is crude vegetable matter, but where crude vegetable matter constitutes the impurity in seeds, Congress has forbidden an allowance.